## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered**<br>**under**<br>**Case No. 08-46617**<br>**Jury Trial Demanded** |
| Polaroid Corporation, et al., | |
| Debtors. | |
| (includes:<br>Polaroid Holding Company;<br>Polaroid Consumer Electronics, LLC;<br>Polaroid Capital, LLC;<br>Polaroid Latin America I Corporation;<br>Polaroid Asia Pacific LLC;<br>Polaroid International Holding LLC;<br>Polaroid New Bedford Real Estate, LLC;<br>Polaroid Norwood Real Estate, LLC;<br>Polaroid Waltham Real Estate, LLC) | 08-46621 (GFK)<br>08-46620 (GFK)<br>08-46623 (GFK)<br>08-46624 (GFK)<br>08-46625 (GFK)<br>08-46626 (GFK)<br>08-46627 (GFK)<br>08-46628 (GFK)<br>08-46629 (GFK) |
| | Chapter 7 Cases<br>Judge Gregory F. Kishel |

| | |
|---|---|
| John R. Stoebner, Trustee, | |
| Plaintiffs, | |
| vs. | Adv. Proc. No. 10-04600 |
| Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes; Deutsche Zentralgenossenschaftbank AG; and John and Jane Does 1-30, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## NOTICE OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT OF DZ BANK AG, DEUTSCHE ZENTRAL GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN

To:    Plaintiff John R. Stoebner, and all other partied entitled to notice by and through

its attorneys:

1.    Defendant DZ Bank AG, Deutsche Zentral Genossenschaftsbank, Frankfurt

Am Main ("Movant"), by its undersigned counsel, hereby moves the Court for an Order

dismissing the above-captioned Adversary Proceeding as against it with prejudice and

gives notice of hearing herewith.

2.    The Court will set a date and time for hearing on this Motion in a

subsequent order.  Pursuant to the Court's Order for Hearing (Doc. No. 47), any response

to this Motion must be filed no later than January 27, 2014.  UNLESS A RESPONSE

OPPOSING THIS MOTION IS TIMELY FILED, THE COURT MAY GRANT THE

MOTION WITHOUT A HEARING.

3.    This Motion arises under Fed. R. Bankr. P. 7012 and Local Rule 7007-1.

This Motion is filed under Fed. R. Bankr. P. 9014 and Local Rules 9013-1 and 9013-2.

By this Motion and for the reasons stated in the accompanying Memorandum of Law,

Movant requests that the Court dismiss the above-captioned Adversary Proceeding as

against Movant with prejudice pursuant to Fed. R. of Civ. P. 8(a), 9(b), 12(b)(6), and

19(a) and Fed. R. of Bankr. P. 7008, 7009, 7019, and 7012(b).

4.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157

and 1344, Fed. R. Bankr. P. 1005, and Local Rule 1070-1.  This matter is a core

proceeding.  The bankruptcy cases jointly administered under No. 08-46617 are now

pending in this Court.

2

5.    In bringing this Motion, Movant does not waive and hereby expressly reserves its right to a jury trial in this matter.

WHEREFORE, Movant respectfully requests that the Court enter an Order dismissing with prejudice the above-captioned Adversary Proceeding as against it in its entirety and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  December 20, 2013          WINTHROP & WEINSTINE


By:  _s/Michael A. Rosow_____
     Michael A. Rosow
     Capella Tower | Suite 3500
     225 South Sixth Street
     Minneapolis, MN  55402-4629
     Phone:  (612) 604-6734
     Facsimile:  (612) 604-6834
     mrosow@winthrop.com

     KAYE SCHOLER LLP
     H. Peter Haveles, Jr.
     425 Park Avenue
     New York, New York  10022
     Phone:  (212) 836-8000
     Facsimile:  (212) 836-8689
     peter.haveles@kayescholer.com

     Attorneys for Defendant DZ Bank AG,
     Deutsche Zentral Genossenschaftsbank,
     Frankfurt Am Main

8615290v1

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | **Jointly Administered under Case No. 08-46617** |
| Polaroid Corporation, et al., | **Jury Trial Demanded** |
| Debtors. | 08-46621 (GFK) |
| | 08-46620 (GFK) |
| (includes: | 08-46623 (GFK) |
| Polaroid Holding Company; | 08-46624 (GFK) |
| Polaroid Consumer Electronics, LLC; | 08-46625 (GFK) |
| Polaroid Capital, LLC; | 08-46626 (GFK) |
| Polaroid Latin America I Corporation; | 08-46627 (GFK) |
| Polaroid Asia Pacific LLC; | 08-46628 (GFK) |
| Polaroid International Holding LLC; | 08-46629 (GFK) |
| Polaroid New Bedford Real Estate, LLC; | |
| Polaroid Norwood Real Estate, LLC; | |
| Polaroid Waltham Real Estate, LLC) | Chapter 7 Cases |
| | Judge Gregory F. Kishel |

| | |
|---|---|
| John R. Stoebner, Trustee, | |
| Plaintiffs, | |
| vs. | Adv. Proc. No. 10-04600 |
| Opportunity Finance, LLC; Opportunity Finance Securitization, LLC, Opportunity Finance Securitization II, LLC; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes; DZ Bank Deutsche Zentralgenossenschaftbank, Frankfurt am Main; and John and Jane Does 1-30, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## DZ BANK AG, DEUTSCHE ZENTRAL GENOSSENSCHAFTSBANK, FRANKFURT AM MAIN'S MEMORANDUM OF LAW  IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................... 1

STATEMENT OF FACTS ........................................................................ 3

    A.    The Parties ........................................................................... 3

    B.    Opportunity Finance's Financing Agreement with PCB ...................................... 4

    C.    DZ Bank's Financing Agreement with Opportunity Finance ................................ 7

    D.    PCB's Relationship to the Petters Ponzi Scheme .................................... 9

ARGUMENT ................................................................................ 10

POINT I    AS A MATTER OF LAW, THE REPAYMENT OF ANTECEDENT DEBT TO DZ BANK WAS FOR REASONABLY EQUIVALENT VALUE ...................................................................... 10

    A.    Reasonably Equivalent Value Was Exchanged .................................... 11

        1.    Repayment of Antecedent Debt Has Value ............................. 11

        2.    The Repayment of Antecedent Debt to DZ Bank Was for Reasonably Equivalent Value ................................................. 16

        3.    DZ Bank Received Both Principal and Interest for Reasonably Equivalent Value ...................................................... 19

    B.    Under the MUFTA, Repayments of Secured Debts are Not "Transfers" ............. 23

POINT II    THE TRUSTEE FAILS TO ALLEGE INSOLVENCY ...................................... 25

CONCLUSION ............................................................................. 30

i

## TABLE OF AUTHORITIES

**Page(s)**

C<small>ASES</small>

Agcountry Farm Credit Services, FLCA v. Oelke,
    No. A04-2096, 2005 WL 1950153 (Minn. Ct. App. Aug. 16, 2005) .....................................24

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................................................3, 21, 22, 26

Askanase v. Fatjo,
    130 F.3d 657 (5th Cir. 1997) .........................................................................................29, 30

B.E.L.T., Inc. v. Wachovia Corp.,
    403 F.3d 474 (7th Cir. 2005) ................................................................................................12

Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.),
    256 B.R. 664 (Bankr. S.D.N.Y. 2000) .................................................................................14

Bell Atlantic Corp. v. Twombly,
    550 U.S. 544 (2007).................................................................................................................21

Bonded Financial Services, Inc. v. European American Bank,
    838 F.2d 890 (7th Cir. 1988) ................................................................................................11

Cage v. GDH International, Inc. (In re Great Gulfcan Energy Texas, Inc.),
    488 B.R. 898 (Bankr. S.D. Tex. 2013) .................................................................................11

Compuware Corp. v. Innovatec Communications, LLC,
    No. 03-C-429, 2005 WL 2076717 (E.D. Wis. Aug. 24, 2005)...............................................24

Dixon v. Ruth (In re Gluth Brothers Construction, Inc.),
    424 B.R 368 (N.D. Ill. 2009) .........................................................................................21, 26

Donell v. Kowell,
    533 F.3d 762 (9th Cir. 2008) ................................................................................................20

Epperson v. Entertainment Express, Inc.,
    338 F. Supp. 2d 328 (D. Conn. 2004)...................................................................................24

Feldman v. Chase Home Finance (In re Image Masters, Inc.),
    421 B.R. 164 (Bankr. E.D. Pa. 2009), aff'd in part, vacated in part sub. nom. Image
    Masters, Inc. v. Chase Home Finance, 489 B.R. 375 (E.D. Pa. 2013) .............................15, 28

Finn v. Alliance Bank,
    838 N.W.2d 585 (Minn. Ct. App. 2013)........................................................ 10, 12, 19-20, 23

Great Plains Trust Co. v. Union Pacific Railroad Co.,
   492 F.3d 986 (8th Cir. 2007) ........................................................................3

Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.),
   471 F.3d 977 (9th Cir. 2006) ......................................................................12

In re Carrozzella & Richardson,
   286 B.R. 480 (D. Conn. 2002) ...............................................................18, 19

In re Old Carco LLC,
   435 B.R. 169 (Bankr. S.D.N.Y. 2010) .........................................................21

In re Petters Co.,
   495 B.R. 887 (Bankr. D. Minn. July 12, 2013).................................... *passim*

In re Petters Corp,
   499 B.R. 342 (Bankr. D. Minn. Sept. 30, 2013) ...............................15, 16, 21, 22

Knight v. Production Resource Group, LCC,
   No. Civ. 036443 (MJD/JGL), 2005 WL 1630523 (D. Minn. July 11, 2005) .............23, 24, 25

Kovacs v. Hanson (In re Hanson),
   373 B.R. 522 (Bankr. N.D. Ohio 2007) ........................................................15

Lorenz Bus Service, Inc. v. Richfield Bus Co.,
   No. C2-02-56, 2002 WL 2005468 (Minn. Ct. App. Sept. 3, 2002).........................24

Marwil v. Oncle (In re Life Fund 5.1 LLC),
   No. 10 A 42, 2010 Bankr. LEXIS 1938 (Bankr. N.D. Ill. June 30, 2010)..............26

Marwil v. Oncle(In re Life Fund 5.1 LLC),
   No. 10 A 42, 2010 Bankr. LEXIS 1938 (Bankr. N.D. Ill. June 30, 2010)..............21

Minnesota Majority v. Mansky,
   708 F.3d 1051 (8th Cir. 2013) ......................................................................3

Moratzka v. Morris (In re Senior Cottages of America, LLC),
   482 F.3d 997 (8th Cir. 2007) ........................................................................3

Official Committee of Unsecured Creditors v. BNP Paribas (In re Propex, Inc.),
   415 B.R. 321 (Bankr. E.D. Tenn. 2009) .......................................................15

Richardson v. The Huntington National Bank (In re Cyberco Holdings, Inc.),
   382 B.R. 118 (Bankr. W.D. Mich. 2008).................................................12, 13, 23

Ries v. Wintz Properties, Inc.(In re Wintz Cos.),
   230 B.R. 848 (B.A.P. 8th Cir. 1999)......................................................10, 23, 24

Sarachek v. The Right Place Inc.(In re Agriprocessors, Inc.),
No. 10-09123, 2011 WL 4621741 (Bankr. M.D. Iowa Sept. 30, 2011) ................................26

Sarachek v. Twin City Poultry (In re Agriprocessors, Inc.),
No. 10-09123, 2013 WL 1402414 (N.D. Iowa April 3, 2013) ................................................12

Sarachek v. Wahls (In re Agriprocessors, Inc.),
No. 10-09196, 2013 WL 1332439 (N.D. Iowa March 28, 2013) ...........................................12

Scholes v. Lehmann,
56 F.3d 750 (7th Cir. 1995) ........................................................................................... 22, 23

Sharp International Corp. v. State Street Bank & Trust Co. (In re Sharp International
Corp.),
403 F.3d 43 (2d Cir. 2005).........................................................................12, 14, 15, 16

Shields v. Goldetsky (In re Butler),
552 N.W.2d 226 (Minn. 1996).............................................................................................23

Siematic Mobelwerke GMBH & Co. KG v. Siematic Corp.,
643 F. Supp. 2d 675 (E.D. Pa. 2009) ...................................................................................24

Stalley v. Catholic Health Initiatives,
509 F.3d 517 (8th Cir. 2007) ...............................................................................................21

Stettin v. The Dan Marino Foundation, Inc. (In re Rothstein Rosenfeldt Adler, P.A.),
483 B.R. 15 (Bankr. S.D. Fla. 2012).....................................................................................11

Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A.,
191 A.D.2d 86, 599 N.Y.S. 2d 816 (1st Dep't 1993) ...........................................................14

Webster Industries, Inc. v. Northwood Doors, Inc.,
320 F. Supp. 2d 821 (N.D. Iowa 2004)................................................................................24

**STATUTES**

11 U.S.C. § 101(32)(A)........................................................................................................29

11 U.S.C. § 548...................................................................................................................23

11 U.S.C. § 548(a)(1)(B) ....................................................................................................26

11 U.S.C. § 548(d)(1)(2).....................................................................................................11

11 U.S.C. § 550...................................................................................................................11

Minn. Stat. § 513.41(2)(i) ...................................................................................................23

Minn. Stat. § 513.41(8)........................................................................................................24

Minn. Stat. § 513.41(12)..................................................................................................23

Minn. Stat. § 513.42........................................................................................................29

Minn. Stat. § 513.43........................................................................................................11

Minn. Stat. § 513.44(a)(1)..............................................................................................23

Minn. Stat. § 513.44(a)(2)..............................................................................11, 22, 25

Minn. Stat. § 513.45(a)....................................................................................22, 25

Defendant DZ Bank AG, Deutsche Zentral Genossenschaftsbank, Frankfurt Am Main ("DZ Bank") submits this memorandum of law in support of its motion to dismiss the Trustee's Second Amended Complaint (the "Complaint") of plaintiff John R. Stoebner, the Chapter 7 Trustee for Polaroid Corporation and related entities (the "Trustee").[1]

## PRELIMINARY STATEMENT

Although they may seem similar if not identical to the issues that the Court addressed in its memoranda opinions in the Petters bankruptcy proceeding, the issues presented on this motion are new issues for this Court to evaluate with respect to claims for fraudulent conveyances. Here, the transfers were made by a special purpose entity (an "SPE") formed by debtor Polaroid Corporation ("Polaroid"), and the Trustee asserts that the SPE's loan repayments are fraudulent conveyances. This Court's rulings in its three memoranda decisions, however, do not provide a template for the resolution of this motion.

There is a substantial and material difference between Petters Company, Inc. and Polaroid. As the Trustee admits, Polaroid was at all times a real and actual business. Polaroid had goods, which it sold, and it received money in exchange for those goods. The loans at issue in this adversary proceeding were loans to purchase inventory and were secured by the resulting accounts receivable from the actual sale of those goods for money.

In other words, this adversary proceeding does not involve an empty shell that was a Ponzi scheme nor a situation in which Polaroid's assets were converted and used by Petters as collateral for further loans made to an empty Petters shell that operated as a Ponzi scheme. Indeed, tellingly absent from the entire 27 page Complaint is any allegation that the purpose of

---

[1]  A copy of the Second Amended Complaint is annexed to the accompanying Affidavit of H. Peter Haveles, Jr., sworn to December 19, 2013 (the "Haveles Affidavit"), as Exhibit 1.

the loan proceeds was to perpetuate the Ponzi scheme by providing new money to pay investors and lenders who were propping up the Ponzi scheme. Rather, as the express allegations in the Complaint state, the loans were provided to facilitate Polaroid's actual and real business operations of buying and selling goods.

The fact that the Trustee alleges that Petters used Polaroid to advance the Ponzi scheme does not change the fact that Polaroid was not a Ponzi scheme. It merely means that Petters used and exploited Polaroid. It does not, and cannot, mean that any of the repayment of those loans constitutes false profits.

Hence, the Trustee's various claims against DZ Bank are not cognizable as a matter of law. Each of the claims must fail because the transfers that Opportunity Finance made to DZ Bank (after Opportunity Finance received transfers from the SPE) were made for reasonably equivalent value. Because Polaroid was a real and actual business selling real and actual goods in exchange for money, that defense precludes as a matter of law the application of a Ponzi scheme presumption in order to create an issue of fact regarding reasonably equivalent value.

Similarly, as a matter of law, the Trustee's claims fail because the Trustee has failed to allege that Polaroid was insolvent at the time of the transfers. Unlike with the Petters entities, there was no empty shell that by virtue of its very nature was insolvent. The Trustee merely alleges that Polaroid lost money, which is not the same as being insolvent. The Complaint is devoid of any alleged facts establishing that Polaroid was insolvent at the time of the transfers.

As a matter of law, under the substantial case law that has developed under the Minnesota Uniform Fraudulent Transfers Act, as well as the analysis set forth in this Court's three memoranda decisions, the Trustee cannot establish that he can prosecute any of his claims as against DZ Bank. Accordingly, DZ Bank's motion to dismiss should be granted in its entirety.

## STATEMENT OF FACTS[2]

### A.    The Parties

On December 18, 2008, Polaroid filed a petition under Chapter 11 of the Bankruptcy Code.  Complaint ¶ 2.  Debtor Polaroid Holding Company ("PHC" and now known as PBE Holding Company) and Polaroid Consumer Electronics, LLC ("PCE" and now known as PBE Consumer Electronics, LLC) are the successors in interest to Petters Consumer Brands, LLC ("PCB").  Id. ¶ 1.  On August 31, 2009, the bankruptcy cases for Polaroid, PHC and PCE were converted to cases under Chapter 7 of the Bankruptcy Code.  Id. ¶ 3.  Plaintiff John R. Stoebner is the Chapter 7 Trustee for each of those entities (and the other related Polaroid entities that filed petitions under the Bankruptcy Code).  Id.

Petters Consumer Brands Funding, LLC ("PCB Funding") is a special purpose entity that PCB created on or about July 28, 2003.  Complaint ¶¶ 46-47.  PCB Funding is not a debtor in these proceedings, and has not otherwise filed a petition under the Bankruptcy Code.

DZ Bank, a commercial bank organized under the laws of Germany, engages in commercial banking, including the business of making loans to businesses to finance their operations.  Complaint ¶ 14.

Defendant Opportunity Finance LLC (with the related entities, collectively "Opportunity Finance") is a company that makes loans to other entities.  Complaint ¶ 43.

---

[2]  For the purposes of this motion, the allegations of the Complaint (to the extent they do not conflict with one another) are accepted as true.  The Court, however, must also consider documents in the public record, documents referenced in the Complaint and documents otherwise embraced by the allegations of the Complaint.  See Minnesota Majority v. Mansky, 708 F.3d 1051, 1056 (8th Cir. 2013); see also Great Plains Trust Co. v. Union Pacific Railroad Co., 492 F.3d 986, 990 (8th Cir. 2007); Moratzka v. Morris (In re Senior Cottages of America, LLC), 482 F.3d 997, 999 n.4 (8th Cir. 2007).  In addition, the Court is not to consider "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Mansky, 708 F.3d at 1055-56 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

**B.**    **Opportunity Finance's Financing Agreement with PCB**

During 2003 through 2005, PCB was in "the business of buying consumer electronics to which PCB would affix the 'Polaroid' brand name and sell to retailers like Best Buy." Complaint ¶ 36. In contrast to other entities operated by Petters, the Trustee admits that PCB "actually purchased, warehoused, and sold to prominent retailers high volumes of consumer electronic equipment, branded with the 'Polaroid' name." Id. ¶ 24 (emphasis added).

PCB Funding entered into a Sale Agreement, dated July 31, 2003,[3] between PCB and PCB Funding, which agreement sets the terms and conditions under which PCB would sell, convey, transfer and assign to PCB Funding all of PCB's rights, title and interest in accounts related to the sale of consumer electronics to retailers. Id. ¶ 46; see Ex. 2 at 3-4.

From 2003 until 2005, pursuant to a Credit Agreement, dated as of July 31, 2003, between PCB and Opportunity Finance,[4] the Trustee admits that Opportunity Finance provided secured loans specifically to finance portions of the Polaroid electronics distribution business. Complaint ¶ 40. Pursuant to Section 2.1 of the Credit Agreement, Opportunity Finance agreed that it might, in its discretion, make loans to PCB Funding in connection with Receivables Sales (i.e., the sale of accounts receivables by PCB to PCB Funding described below). Haveles Affidavit, Ex. 3 at 3-4.

---

[3]    A copy of the Sale Agreement is annexed to the Haveles Affidavit as Exhibit 2. The Trustee refers to and describes the transactions underlying the Sales Agreement and their terms, and thus incorporates, the terms of the Sale Agreement in paragraphs 40-47 of the Complaint. For example, paragraph 46 states: "PCB Funding would use the proceeds of those loans to purchase accounts receivable from PCB. PCB itself would use the money thereby obtained from PCB Funding to buy more consumer goods to resell."

[4]    A copy of the Credit Agreement is annexed to the Haveles Affidavit as Exhibit 3. The Trustee refers to and describes, and thus incorporates, the terms of the Credit Agreement in paragraphs 43-45 of the Complaint.

In order to effectuate those loans, PCB Funding purchased accounts from PCB. Complaint ¶ 46. Pursuant to Section 2.2(a) of the Credit Agreement, PCB Funding was required to use the proceeds of the loans solely for the purpose of paying the purchase price for the accounts purchased from PCB. Haveles Affidavit, Ex. 3 at 4. PCB Funding pledged, among other things, those accounts to Opportunity Finance in connection with the loans that Opportunity Finance made to PCB Funding. Complaint ¶ 46; Haveles Affidavit, Ex. 4 at 4.

With the funds that PCB obtained as a result of the transactions with PCB Funding and Opportunity Finance, PCB "purchase[d] consumer electronics for resale to retailers like Best Buy or to cause payments to third parties claiming rights, or otherwise concerning, such consumer electronics."[5] Complaint ¶ 41; see Haveles Affidavit, Ex. 2 at 5-6. As PCB sold those goods to retailers and generated new accounts, Complaint ¶ 46, in connection with the sale of the resulting accounts due to PCB Funding, Section C of the Sale Agreement required PCB to direct its customer to direct payment for those goods to bank accounts designated by PCB Funding. Haveles Affidavit, Ex. 2 at 4.

Pursuant to the Credit Agreement, Opportunity Finance caused PCB to form PCB Funding, a special-purpose entity. Complaint ¶¶ 46, 47. PCB Funding was created as a "bankruptcy remote vehicle," and was considered to be a "real and independent entity" to which Opportunity Finance made loans. Complaint ¶ 46. Section 5.7 of the Credit Agreement set forth the 14 criteria that PCB Funding had to satisfy in order to be a special-purpose entity. Haveles Affidavit, Ex. 3 at 10-11. The Trustee does not allege that PCB Funding failed to comply with any of those criteria.

---

[5]    According to the Trustee, PCB consistently lost money and operated at a net loss, and could not realistically make a profit. Complaint ¶¶ 37-38. Further, according to the Trustee, only PCB and Petters knew that PCB was destined to fail. Id. ¶ 39.

PCB Funding "grant[ed] Opportunity Finance a security interest in [certain] accounts receivable." Complaint ¶ 46. In particular, pursuant to Section 2 of the Security Agreement, dated as of July 31, 2003, between PCB Funding and Opportunity Finance,[6] PCB Funding granted Opportunity Finance a security interest in all of PCB Funding's accounts, books and records, chattel paper, contracts, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, investment property, money, cash or cash equivalents and all proceeds of the foregoing. Id.; Haveles Affidavit, Ex. 4 at 4.

Pursuant to the agreements with Opportunity Finance, PCB Funding created a bank account in the name of PCB Funding. Complaint ¶ 46; Haveles Affidavit, Ex. 3 at 4-5; Ex. 4 at 6-7. Under the agreements, Opportunity Finance had control over that bank account.[7] Complaint ¶ 46. Section 2.2(b) of the Credit Agreement required both PCB and PCB Funding to direct PCB's customers to make payments for the goods that PCB sold to said bank account. Haveles Affidavit, Ex. 3 at 4-5; see id., Ex. 2 at 4.

PCB used the funds that it "obtained from PCB Funding to buy more consumer goods to resell." Complaint ¶ 46. PCB caused the purchasers of its consumer goods, such as Best Buy (i.e., the entities from which the PCB accounts receivables were due), to direct their payments for the goods to the bank account maintained in PCB Funding's name.[8] Id. ¶¶ 36, 46.

---

[6]    A copy of the Security Agreement is annexed to the Haveles Affidavit as Exhibit 4. The Trustee refers to and describes, and thus incorporates, the terms of the Security Agreement in paragraph 46 of the Complaint.

[7]    Pursuant to Section 2 of the Security Agreement, PCB Funding gave Opportunity Finance a security interest in, among other things, "all money, cash or cash equivalents" belonging to PCB Funding. Haveles Affidavit, Ex. 4 at 5.

[8]    As described above, PCB had that obligation under the Sale Agreement. See this Memo at 4, supra.

Opportunity Finance took the account proceeds from "the PCB Funding bank account to pay itself the principal and interest due on its loans." Complaint ¶ 48. When customers of PCB deposited funds into that bank account, pursuant to the waterfall set forth in Section 2.2(b) of the Credit Agreement, the funds were to be distributed and applied first to the amounts due to Opportunity Finance with respect to the loans made to PCB Funding. Haveles Affidavit, Ex. 3 at 4-5. After Opportunity Finance exercised its right to withdraw funds from the PCB Funding bank account in order to repay principal and interest, according to the Trustee, Opportunity Finance returned the excess funds to PCB as opposed to PCB Funding. Complaint ¶ 48; Haveles Affidavit, Ex. 3 at 4-5. Pursuant to Section 2.2(b) of the Credit Agreement with respect to proceeds in the bank account remaining after all payments due to Opportunity Finance had been made, and provided that there was no event of default, the funds could be disbursed either to PCB Funding or "such party or parties as [PCB Funding] may direct . . . ." Haveles Affidavit, Ex. 3 at 5.

### C.    DZ Bank's Financing Agreement with Opportunity Finance

At first, Opportunity Finance provided loans to PCB Funding using its own financial resources. Complaint ¶¶ 31(c), 35, 40, 43, 45. In June 2004, under the Receivables Loan and Security Agreement, dated as of June 8, 2004, among Opportunity Finance Securitization II, LLC, Opportunity Finance, Autobahn Funding Company LLC and DZ Bank,[9] DZ Bank agreed to provide a credit line to Opportunity Finance. Complaint ¶ 14; Ex. 5 at 30-32. Opportunity

---

[9]    A copy of the Receivables Loan and Security Agreement is annexed to the Haveles Affidavit as Exhibit 5. The Trustee refers to and describes, and thus incorporates, the terms of the Receivables Loan and Security Agreement in paragraphs 31 and 35 of the Complaint.

Finance used the funds provided by the line of credit from DZ Bank to finance a portion of its loans to PCB Funding.[10]  Complaint ¶ 14.

As collateral for the loan, Opportunity Finance pledged to DZ Bank the collateral that it had received for its loan to PCB Funding.  Pursuant to Section 2.11 of the Receivables Loan and Security Agreement, Opportunity Finance "collaterally assign[ed] and pledge[d] to [DZ Bank,] the Collateral Agent, on behalf of the Secured Parties (and their successors and assigns) and grants to the Collateral Agent, on behalf of the Secured Parties (and their successors and assigns), a security interest in, all of the Borrower's right, title and interest in, to and under all of its assets."  Haveles Affidavit, Ex. 5 at 41.

According to the Trustee, when DZ Bank could not obtain adequate assurances from Petters and his entities regarding the existence of the goods that were used as collateral, DZ Bank ceased to provide financing to Opportunity Finance.  Complaint ¶ 31(c).  According to the Trustee, "despite actually knowing of the possibility of fraud because Petters Company, Inc. had refused to provide adequate assurances of the existence of purported collateral, DZ Bank nevertheless proceeded to provide financing to Opportunity Finance to fund loans concerning PCB."  Complaint ¶ 35.  The Trustee sets forth no allegations in his Complaint beyond that assertion as to how DZ Bank purportedly knew of the possibility of fraud at Polaroid.  Nor does the Trustee set forth any allegations that establish a nexus between the failure to provide adequate assurances about the existence of collateral and the knowledge of possibility of fraud

---

[10]  In the Complaint, the Trustee's allegations regarding the relationship between Opportunity Finance and DZ Bank concerning the Receivables Loan and Security Agreement, as well as the operation of that agreement, are rife with factual errors.  Although for the purposes of this motion DZ Bank does not challenge the accuracy of the Trustee's allegations, see this Memo at 3 n.2, supra, DZ Bank does not waive its right to challenge at the appropriate time the accuracy of those allegations by using, among other things, the substantial objective documentary evidence that is already in the possession of the Trustee.

beyond the allegations set forth in paragraph 31(c) of the Complaint. Nor does the Trustee allege why the alleged knowledge regarding Petters has any bearing when Polaroid actually had inventory and pledged real collateral.

The Trustee makes no allegations regarding whether there were transfers from PCB Funds to DZ Bank. Nor does the Trustee allege that DZ Bank had a contractual relationship with PCB, PHC, PCE or PCB Funding.

### D.    PCB's Relationship to the Petters Ponzi Scheme

The Trustee concedes that PCB "actually purchased, warehoused, and sold to prominent retailers high volumes of consumer electronic equipment, branded with the 'Polaroid' name." Complaint ¶ 24. He does not allege that PCB itself was a Ponzi scheme, and the facts admitted by the Trustee preclude him from doing so.

The Trustee further states that the purpose of PCB was to "give [Petters'] business activities a false air of legitimacy and to extend the duration of the Ponzi scheme." Id. The Trustee, however, does not allege that any third party, such as DZ Bank, knew that PCB was being used for such purposes.

According to the Trustee, Petters in effect looted PCB, by taking proceeds out of PCB. Complaint ¶ 26 (Petters "personally took some of those Ponzi proceeds out of PCB"). The Trustee further alleges, without any specificity or elaboration, that Petters "used PCB to launder money from his Ponzi scheme." Id. ¶ 25. The Trustee does not, and could not, allege that PCB Funding paid such money to either Opportunity Finance or DZ Bank.

9

## ARGUMENT

### POINT I

### AS A MATTER OF LAW, THE REPAYMENT OF ANTECEDENT DEBT TO DZ BANK WAS FOR REASONABLY EQUIVALENT VALUE

As a matter of law, Opportunity Finance's loan repayments to DZ Bank, as well as PCB Funding's loan repayment to Opportunity Finance, do not constitute a fraudulent transfer under Minnesota law.

First, the Trustee fails to allege any facts supporting his claim that the transfers lacked "reasonably equivalent value." As a matter of law, a debtor's repayment of antecedent debt constitutes reasonably equivalent value and cannot be a fraudulent conveyance. Moreover, the Trustee fails to set forth sufficient allegations that create an issue as to DZ Bank's innocence, as occurred with the Petters trustee's allegations in the context of a Ponzi scheme when the debtor's repayment of antecedent debt would have otherwise qualified as reasonably equivalent value. See In re Petters Co., 495 B.R. 887, 919-20 (Bankr. D. Minn. July 12, 2013) ("Petters II"). On a motion to dismiss, under Minnesota law,[11] allegations that there was a Ponzi scheme cannot overcome the transferee's defense that the transfer was for reasonably equivalent value because it was a repayment of antecedent debt. See Finn v. Alliance Bank, 838 N.W.2d 585, 601-03 (Minn. Ct. App. 2013).

Second, the Trustee acknowledges that DZ Bank's loan to Opportunity Finance was secured and encumbered by security interests. See Complaint ¶¶ 14, 31, 35, 46-51, 80-83. The Trustee likewise admits that the property conveyed by PCB Funding (or PCB) was encumbered

---

[11]  The Trustee's fraudulent conveyance claims are governed by the Minnesota Fraudulent Transfer Act ("MUFTA"). See Ries v. Wintz Properties, Inc. (In re Wintz Cos.), 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999).

by security interests in favor of Opportunity Finance with respect to real assets.  See, e.g., id. ¶ 46.  As a matter of law, pursuant to both the Bankruptcy Code and the MUFTA, any conveyances of assets that are encumbered by security interests cannot be constructive or actual fraudulent transfers.

### A.    Reasonably Equivalent Value Was Exchanged

#### 1.    Repayment of Antecedent Debt Has Value

The MUFTA provides that, in order for a constructive fraudulent transfer claim to arise, the debtor must make the transfer "without receiving a reasonably equivalent value in exchange for the transfer or obligation."  Minn. Stat. § 513.44(a)(2).  Both the MUFTA and the Bankruptcy Code state that value is exchanged when an antecedent debt is secured or satisfied.  See 11 U.S.C. § 548(d)(1)(2) (value given for a transfer includes "satisfaction or securing of a present or antecedent debt of the debtor");[12] Minn. Stat. § 513.43 ("[v]alue is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied").

---

[12]  DZ Bank also has a compelling defense, as an indirect transferee, under Section 550 of the Bankruptcy Code.  In the event that the Court does not grant DZ Bank's Motion to Dismiss, DZ Bank will assert that defense at the summary judgment stage.  It is important to note, however, that even at this procedural stage, the issue of "value" under Section 550 is not a disputed issue of fact.  Value under Section 550 constitutes what the transferee gave up rather than what the debtor received.  See Bonded Financial Services, Inc. v. European American Bank, 838 F.2d 890, 897 (7th Cir. 1988); Cage v. GDH International, Inc. (In re Great Gulfcan Energy Texas, Inc.), 488 B.R. 898, 914 (Bankr. S.D. Tex. 2013) (value under Section 550 does "not mean value to the debtor; a natural reading of this section looks to what the transferee gave up rather than what the debtor received."); Stettin v. The Dan Marino Foundation, Inc. (In re Rothstein Rosenfeldt Adler, P.A.), 483 B.R. 15, 22 (Bankr. S.D. Fla. 2012) ("Unlike §548(c), §550(b)(1) does not require that the value given by the subsequent transferee be given to the debtor.  Since a subsequent transferee receives the transfer from someone other than the debtor, absent peculiar circumstances, it would be unreasonable for one to expect a subsequent transferee to provide value to the debtor in exchange for the transfer." (internal citations omitted)).  Hence, under Section 550, based on his allegations, the Trustee is unable to dispute the issue.  As a matter of law, under Section 550, there was reasonable value for the payment of both interest and principal to DZ Bank.

Courts have repeatedly held that, based on the MUFTA and the Bankruptcy Code, the repayment of an antecedent debt has value and therefore is not a fraudulent transfer.  See B.E.L.T., Inc. v. Wachovia Corp., 403 F.3d 474, 478 (7th Cir. 2005) ("[r]epayment of an antecedent loan comes within the 'reasonably equivalent value' rule -- which is just another way of saying that preferential transfers differ from fraudulent conveyances"); Sharp International Corp. v. State Street Bank & Trust Co. (In re Sharp International Corp.), 403 F.3d 43, 54-55 (2d Cir. 2005) ("the satisfaction of a preexisting debt qualifies as fair consideration for a transfer or property"); Finn, 838 N.W.2d at 602; Sarachek v. Twin City Poultry (In re Agriprocessors, Inc.), No. 10-09123, 2013 WL 1402414, at *4 (N.D. Iowa April 3, 2013) (the "[r]etirement of prior debt is reasonably equivalent value for [the] purpose of the fraudulent conveyance defense"); Sarachek v. Wahls (In re Agriprocessors, Inc.), No. 10-09196, 2013 WL 1332439, at *4 (N.D. Iowa March 28, 2013) (an "economic benefit, and therefore reasonably equivalent value, exists when a debtor pays an antecedent debt").

In addition, under the Bankruptcy Code, repayments of secured debts do not constitute a fraudulent transfer.  See Henry v. Lehman Commercial Paper, Inc. (In re First Alliance Mortgage Co.), 471 F.3d 977, 1008 (9th Cir. 2006); Richardson v. The Huntington National Bank (In re Cyberco Holdings, Inc.), 382 B.R. 118, 137 (Bankr. W.D. Mich. 2008).  Repayment of fully secured debts "do[es] not hinder, delay, or defraud creditors because the transfers do not put assets otherwise available in a bankruptcy distribution out of their reach."  Lehman, 471 F.3d at 1008 (citations omitted).  In other words, when a debtor repays an antecedent or preexisting debt, the creditor takes nothing more than its own collateral.  See Richardson, 382 B.R. at 137.

For example, in Richardson, the debtor engaged in a classic Ponzi scheme, as it fraudulently obtained equipment financing from various financial institutions to which it made

monthly payments.  Id. at 126.  The trustee alleged that the defendant bank perpetuated the fraud by intentionally overlooking numerous warning signs, which the bank allegedly did because it was owed over $17 million.  Id. at 127.  The bank eventually ended the lending relationship months before the debtor's collapse.  Id.  The trustee alleged that the debtor's repayments of its debt were fraudulent conveyances.  Id. at 132.  The court held that the bank received nothing more than what the debtor owed the bank when the bank swept the debtor's bank accounts for repayment of its loan,[13] and noted that the bank had a security interest in the accounts that were subject to the sweeps.  Id.  Thus, as a matter of law, the debtor could not have fraudulently transferred that money to the bank.  Id. at 137.

In the Complaint, the Trustee has admitted a number of facts that are fatal to his fraudulent conveyance claims against DZ Bank.  First, PCB was a real business that bought and sold goods, and PCB sold at prices greater than what it had paid.  See Complaint ¶¶ 24, 46. Second, Opportunity Finance made secured loans to PCB Funding, which were secured by actual and real accounts receivable that PCB generated from its actual sales of goods.  Id. ¶ 46.  Third, DZ Bank extended a credit line to Opportunity Finance, which credit line was secured by the pledge of the real collateral that Opportunity Finance received from PCB.  Id.  Finally, the payments that PCB Funding made to Opportunity Finance and that Opportunity Finance made to DZ Bank constituted repayment of principal and interest under their respective credit lines.  Id. ¶ 45.

When Opportunity Finance repaid its loan to DZ Bank, Opportunity Finance was repaying a preexisting secured loan to DZ Bank.  See Haveles Affidavit, Ex. 5 at 34.  The

---

[13]   The court also held that any transfers from the lockbox by the debtor were also the bank's collateral because those funds represented proceeds of receivables in which the bank held a security interest. Richardson, 382 B.R. at 135 n.18.

Trustee never alleges that DZ Bank received, as a result of the transfers, more than what it was owed by Opportunity Finance. See Complaint ¶¶ 14, 31, 35, 80-83. Nor does the Trustee allege that Opportunity Finance's transfer to DZ Bank were not repayments of an antecedent debt. See id. Moreover, the Trustee makes no allegations regarding any transfers from PCB Funding to DZ Bank.

Based on the Trustee's admissions, Sharp, 403 F.3d 43 is instructive. State Street Bank and Trust Company ("State Street") issued a $20 million loan to Sharp International Corporation ("Sharp") that was secured by Sharp's assets. Id. at 47. Two years after State Street had issued the line of credit, State Street began to suspect that Sharp was engaging in fraud, and arranged for Sharp to repay the loan from the proceeds of new loans. Id. State Street, however, did not inform Sharp's new lenders about its suspicions of fraud. Id. at 48. Sharp's bankruptcy trustee sued State Street, contending that the loan repayments were fraudulent conveyances. Id. On a motion to dismiss, the bankruptcy court dismissed the trustee's claim, and the Second Circuit affirmed, holding that the trustee failed to allege lack of fair consideration.[14] Id. at 53. The court held that "a conveyance which satisfies an antecedent debt made while the debtor is insolvent is neither fraudulent nor otherwise improper, even if its effect is to prefer one creditor over another. It is of no significance that the transferee has knowledge of such insolvency." Id. at 54 (quoting Ultramar Energy Ltd. v. Chase Manhattan Bank, N.A., 191 A.D.2d 86, 90-91, 599 N.Y.S. 2d 816, 819 (1st Dep't 1993)).

---

[14] Courts have held that "fair consideration" under New York's Uniform Fraudulent Conveyance Act has the same fundamental meaning as "reasonably equivalent value" under the Uniform Fraudulent Transfer Act (on which the MUFTA is based). See, e.g., Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.), 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000).

Similarly, here, each transfer received by DZ Bank satisfied an antecedent debt, and the satisfaction of that debt as a matter of law constitutes reasonably equivalent value. <u>Accord</u> <u>Feldman v. Chase Home Finance (In re Image Masters, Inc.)</u>, 421 B.R. 164, 178-79 (Bankr. E.D. Pa. 2009) (holding on a motion to dismiss that repayments of antecedent debt were made in exchange for reasonably equivalent value), <u>aff'd in part</u>, <u>vacated in part</u> <u>sub. nom.</u> <u>Image</u> <u>Masters, Inc. v. Chase Home Finance</u>, 489 B.R. 375 (E.D. Pa. 2013) (affirming the holding that repayments of antecedent debt were made in exchange for reasonably equivalent value); <u>Official</u> <u>Committee of Unsecured Creditors v. BNP Paribas (In re Propex, Inc.)</u>, 415 B.R. 321, 324 (Bankr. E.D. Tenn. 2009) (debtor "received 'reasonably equivalent value' for the $20 million payment as a matter of law because the payment reduced the principal balance of the indebtedness dollar-for-dollar"); <u>Kovacs v. Hanson (In re Hanson)</u>, 373 B.R. 522, 526 (Bankr. N.D. Ohio 2007) (reasonably equivalent value was obtained, as transfer was in satisfaction of the debtor's debts).

This Court distinguished the ruling in <u>Sharp</u> in its third <u>Petters</u> opinion. <u>See In re Petters</u> <u>Corp.</u>, 499 B.R. 342, 349-350 (Bankr. D. Minn. Sept. 30, 2013) ("<u>Petters III</u>"). Because the Trustee has alleged fundamentally different facts than the Petters trustee has alleged, however, DZ Bank respectfully submits that <u>Sharp</u>'s ruling is applicable here. This Court held that the various defendants' reliance on <u>Sharp</u> was "too broad-brush at best, and inapposite at worst," observing that there were differences between the factual matrices pleaded in <u>Sharp</u> compared to those pleaded by the Petters trustee. <u>Id.</u> at 349. In particular, this Court held that the lack of averments of intent to defraud made <u>Sharp</u> completely different from the factual averments in the various <u>Petters</u> complaints. <u>Id.</u> at 350. The Court noted that the circumstances in <u>Petters</u> involved "a massive, multi-year Ponzi scheme," whereas those in <u>Sharp</u> did not. <u>Id.</u> at 351.

Thus, because "[f]raudulent intent is properly assumed to pervade the operation of a Ponzi scheme" and Sharp did not involve a failed Ponzi scheme and the Sharp court consequently did not have to address the presumption of intent applicable to a Ponzi scheme, the Court declined to follow Sharp. Id.

On this motion, DZ Bank's reliance on the Sharp decision, on the other hand, is appropriate. First, DZ Bank relies on the Sharp decision only to the extent that it discusses the dismissal of the constructive fraudulent conveyance claims and how the satisfaction of antecedent debt constitutes reasonably equivalent value. DZ Bank does not rely on any part of the Sharp decision discussing the element of intent. Second, the material differences in the factual averments in the complaints in Sharp and Petters are not present here. As in Sharp, the Trustee does not allege that PCB and PCB Funding themselves were a Ponzi scheme -- PCB was a real business, with real sales revenues, the receivables for which were used as collateral to finance the goods sold to generate that revenue. See Complaint ¶ 24.

> ### 2.   The Repayment of Antecedent Debt to DZ Bank Was for Reasonably Equivalent Value

On a motion to dismiss in the case commenced by the Petters trustee, this Court held that, on the facts alleged by the trustee, repayment of antecedent debt does not qualify as reasonably equivalent value when the recipient knowingly participates in a Ponzi scheme. Because of the facts admitted in the Trustee's allegations in this case, however, DZ Bank respectfully submits that the Court's holding does not apply here.

In Petters II, this Court applied a Ponzi scheme presumption with respect to the transfers to, among others, lenders. See Petters II, 495 B.R. at 907-12. Here, in sharp contrast, the Trustee does not allege facts sufficient to justify adoption of such a presumption to create an issue of fact regarding reasonably equivalent value. Rather, the Trustee concedes that PCB,

unlike the Petters entities, was a real business.  Complaint ¶ 24.  The Trustee admits that PCB "actually purchased, warehoused, and sold to prominent retailers high volumes of consumer electronic equipment, branded with the 'Polaroid' name."  Id.  The Trustee does not contend that either PCB or PCB Funding itself was a Ponzi scheme, see id. ¶¶ 32, 40, but instead acknowledges that PCB was a real company.  Id.

Moreover, the Trustee's conclusory allegation that Opportunity Finance's loans to PCB were "in furtherance of the Ponzi scheme" fall short of establishing that PCB or any of the related Polaroid entities was engaged in the Ponzi scheme.  See id. ¶¶ 32, 40.  As the Court explained in Petters II, a transfer is made "in furtherance of" a Ponzi scheme when "the churn of money in and out, to keep early investors satisfied, is essential to maintaining the facade of a sound, stable operation that will keep current lenders lulled and will attract future ones."  Petters II, 495 B.R. at 908.  There, the Court stated that "the backdrop pleading of the nature and long-term existence of the scheme; the use of new individual lenders' money to make payment on larger revolving lending facilities; the use of the proceeds of the revolving facilities for everyday operation; and (for some) the Debtors' payment of interest at high or very high contractual rates" was enough to "plausibly make out a theory of furtherance" against the lender defendants.  Id. at 909-10. The Court relied on the Petters trustee's allegations that "the use of lender infusions in the flow through to earlier investors, and the payment out to earlier lenders and other purposes as a means to avoid default and to sustain the facade against collapse."  Id. at 910.  The Trustee, however, makes no such allegations that PCB's business was a facade or operated in such a manner.  Just the opposite was true –  the Trustee acknowledges that PCB had sales, had revenue and engaged in a real business.  Complaint ¶ 24.

In addition, the Trustee sets forth no allegations as to how DZ Bank purportedly knew of the possibility of fraud by PCB. Although the Trustee alleges that DZ Bank knew of the possibility of fraud because Petters Company, Inc. (in connection with a different and earlier loan unrelated to the PCB and PCB Funding business) had refused to provide adequate assurances of the existence of purported collateral, Complaint ¶ 35, here, there were admittedly real goods and collateral underlying DZ Bank's loan. Id. ¶ 24. Further, at no point does the Trustee allege that DZ Bank knew that Petters was using PCB to "extend the duration of the Ponzi scheme." In sum, the Trustee's allegations regarding DZ Bank are not enough to establish that DZ Bank was involved with or had knowledge of Petters' Ponzi scheme. Indeed, the totality of the Trustee's allegations specifically concerning DZ Bank in Paragraphs 31(c) and 35 of the Complaint amount to a concession by the Trustee that DZ Bank could legitimately proceed with its credit facility with Opportunity Finance because there was collateral subject to confirmation, which thereby addressed any uncertainty about the business' bona fides.[15]

The Trustee's allegations are virtually identical to the allegations in In re Carrozzella & Richardson, 286 B.R. 480 (D. Conn. 2002), which were held to be insufficient as a matter of law. There, the defendants loaned money to a law firm operating a Ponzi scheme. Id. at 483. Over time, the defendants received a return on their principal plus interest. Id. at 484. Even though

---

[15] In Petters II, the Court concluded that the Petters trustee had alleged sufficient facts regarding the lenders' lack of innocence to prevent the lenders from establishing as a matter of law that they were protected by the reasonably equivalent value defense. See Petters II, 495 B.R. at 917-20. In reaching that conclusion, this Court relied on numerous allegations, including allegations about the high rates of return promised to investors, the lenders' awareness of changes in Petters Company, Inc.'s business practices and operations, the pervasive lack of transparency and the lenders' awareness of Petters Company, Inc.'s suspicious business practices. Id. at 919-20. Here, in his Complaint, the Trustee makes no such allegations with respect to the loans that were extended by Opportunity Finance to PCB. Nor could the Trustee make such allegations because Polaroid sold goods and did not use a fictional "middleman" to give the appearance of the sale of goods and the creation of accounts receivable.

the debtor was engaged in a Ponzi scheme, the court held that there was an exchange of reasonably equivalent value.  Id. at 491.  The court first held that there was no suggestion in the record that the defendants "were anything but innocent investors."  Id. at 491.  In addition, "[i]n exchange for the interest paid to the Defendants, the Debtor received a dollar-for-dollar forgiveness of a contractual debt.  This satisfaction of an antecedent debt is 'value.'"  Id.  Thus, the trustee had failed to establish that the debtor did not receive reasonably equivalent value upon his payment to the investor defendants.  Id. at 492.

In Petters II, the Court distinguished Carrozzella & Richardson because of the Petters trustee's allegations regarding Petters Company, Inc. and Petters' Ponzi scheme.  Petters II, 495 B.R. at 920 n.47.  Those allegations, however, are not present in the Trustee's Complaint.  The Petters trustee had specifically alleged why the defendants were not innocent investors.  Id. at 919-20.  On the other hand, in Carrozzella, and similarly here, there are no allegations establishing that the recipients of the transfers were not innocent.  See Carrozzella & Richardson, 286 B.R. at 491.

### 3. DZ Bank Received Both Principal and Interest for Reasonably Equivalent Value

Under Minnesota law, a party cannot allege that the debtor received less than reasonably equivalent value because the debtor was part of a Ponzi scheme in order to override the defense that the repayment of an antecedent debt was for reasonably equivalent value.  See Finn, 838 N.W.2d at 601-03.  In Finn, the Minnesota Court of Appeals recently held, in connection with granting a motion to dismiss, that the existence of a Ponzi scheme as a matter of law cannot establish a presumption of a lack of reasonably equivalent value.  Id. at 603.  The receiver alleged that the banks made profits from their investments in the debtor's Ponzi scheme and asserted that the debtor's repayments to the banks constituted actual and constructive fraudulent

transfers under the MUFTA.  Id. at 590.  The Court of Appeals reversed the trial court's decision, which had granted summary judgment against the banks, and held that the court had erred in applying the Ponzi scheme presumption to conclude that the payments were not in exchange for reasonably equivalent value.  Id. at 602-03.  The Finn court reasoned:

> The above justification for the third effect of the Ponzi-scheme presumption [as discussed in Scholes v. Lehmann, 56 F.3d 750, 757 (7th Cir. 1995), and Donell v. Kowell, 533 F.3d 762, 777 (9th Cir. 2008)] does not apply to the receiver's claims against Alliance and may not apply to claims against respondent banks.  The receiver does not assert that Alliance's participation was in an oversold or fraudulent loan.  Moreover, it is undisputed that the Arizona borrower in whose loan Alliance purchased the participation paid First United the full amount of the loan principal, plus fees and interest, and that First United in turn paid Alliance the amount required under the loan-participation agreement.  The payments to Alliance were not fictitious profits that depleted First United's resources, as in Donell and Scholes, but rather were profits that First United paid out in exchange for reasonably equivalent value.  Therefore, unlike application of the first and second effects of the Ponzi-scheme presumption, applying the third effect to the claims against Alliance would be an extension of the presumption articulated in Donell.  But more importantly, it would be an extension of the MUFTA.

> The MUFTA provides that a transfer made with fraudulent intent is not voidable if the transferee "took in good faith and for a reasonably equivalent value."  And a transfer is not constructively fraudulent under the MUFTA if it was made in exchange for reasonably equivalent value.  Value is given if the transfer satisfies an antecedent debt.  Here, the record establishes that Alliance purchased a participation interest in a loan made by First United to a legitimate borrower and that the borrower repaid First United the loan principal, plus required interest and fees.  Moreover, the receiver did not allege in the district court, nor does it argue on appeal, that First United's payments to Alliance depleted First United's assets as envisioned by the court in Donell or the drafters of the UFTA, or that the underlying loan that Alliance participated in was in any way oversold or nonexistent.  Further, the receiver does not assert that Alliance lacked good faith when it entered into the loan-participation agreement with First United.

> Applying the presumption that profits were not received for reasonably equivalent value to the claims against Alliance would create an exception to the MUFTA's reasonably-equivalent-value defense against actual-fraud claims and the reasonably-equivalent-value element of constructive fraud.  If an exception to the MUFTA is to be adopted in Minnesota in Ponzi scheme cases, it must be done by the supreme court or the legislature, not this court.

Id. at 602-03 (emphasis added; citations and footnote omitted).

Based on the Trustee's allegations as against DZ Bank and the conduct of Polaroid and PCB, those same circumstances exist here and mandate the same result. Here, the Trustee has alleged a Ponzi scheme in an attempt to override DZ Bank's defense. See Complaint ¶ 66. As a matter of law, however, the Trustee's allegations cannot do so for two reasons. First, the Trustee acknowledges that PCB was a real business and does not allege that PCB or PCB Funding engaged in a Ponzi scheme. See Complaint ¶¶ 24, 36, 46.[16] Second, the court in Finn specifically rejected the use of this presumption for such a purpose. Finally, as discussed in Point II below, the Trustee fails to allege that the payments to DZ Bank depleted PCB or PCB Funding's assets.

Further, the Trustee's allegations concerning DZ Bank fail as a matter of law because they are contradictory and implausible, and thus not cognizable under Iqbal.[17] At one point, the Trustee asserts that DZ Bank continued to finance the loans to Opportunity Finance in

---

[16]  The Trustee's allegations that the interest paid on the loans constituted "false profits" are conclusory, and are merely an attempt to seek the relief permitted by this Court in its third Petters memorandum. Compare Complaint ¶¶ 24, 65, 67 with Petters III, 499 B.R. at 359. Such an allegation is merely the result or consequence of there having been a Ponzi scheme, but does not constitute a factual allegation establishing the existence of a Ponzi scheme.

[17]  Bare assertions "devoid of 'further enhancement'" cannot withstand a motion to dismiss. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); Dixon v. Ruth (In re Gluth Brothers Construction, Inc.), 424 B.R 368, 377 (N.D. Ill. 2009) ("a 'formulaic recitation of the elements of a cause of action will not do'"); Marwil v. Oncle (In re Life Fund 5.1 LLC), No. 10 A 42, 2010 Bankr. LEXIS 1938, at * 7 (Bankr. N.D. Ill. June 30, 2010) (citations omitted). Under the standard set forth by the United States Supreme Court, the complaint must present sufficient facts to suggest that the conduct alleged is plausible. Iqbal, 556 U.S. at 678; see also In re Old Carco LLC, 435 B.R. 169, 176 (Bankr. S.D.N.Y. 2010). The plausibility standard is met when the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. Dismissal is warranted "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 679. A complaint stating facts "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility" of entitlement to relief. Id. at 678 (citing Twombly, 550 U.S. at 557); accord Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007) (the plaintiff must "assert facts that affirmatively and plausibly suggest that it has the right [it] claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right"); Petters II, 495 B.R. at 894.

connection with PCB Funding, despite having been refused adequate assurances from Petters Company, Inc. and Petters of the existence of the purported collateral.  Complaint ¶ 35.  Yet, in a previous paragraph, and in the only other allegation specifically directed against DZ Bank, the Trustee contradicts himself and states that, when DZ Bank was unable to obtain adequate assurances from Petters Company, Inc. and Petters, DZ Bank actually withdrew its funding.  Id. ¶ 31(c).  Such a contradiction, given the PCB's real and concrete business, makes it impossible for the Trustee to comply with Iqbal and to plead plausible allegations of fraud or lack of innocence by DZ Bank.

On the other hand, in the Court's third memorandum, this Court held that, on the facts alleged therein:

> The Trustee cannot exercise the power of avoidance under the constructive-fraud theories of applicable statute as to any Debtor's repayment to any defendant of principal on a loan or other extension of credit previously made by that defendant to the Debtor, because that repayment gave reasonably equivalent value to the Debtor via the satisfaction of a preexisting debt on a claim for restitution. However, on behalf of the appropriate bankruptcy estate, the Trustee may avoid, as a constructively-fraudulent transfer within the scope of 11 U.S.C. § 548(a)(1)(B) and Minn. Stat. §§ 513.44(a)(2) and 513.45(a), that portion of any payment to any such defendant that was in excess of the amount of principal paid, whether denominated as profit, interest, or otherwise, because the paying Debtor did not receive a reasonably equivalent value from the defendant in exchange for the payment.

See Petters III, 499 B.R. at 359.  This Court's holding that the Petters trustee may recover interest (even though he may not recover repayment of principal) was premised on the application of the Ponzi scheme doctrine and its reliance on Scholes.  In reliance on Scholes, the Court stated that, "given the inherent insolvency of a Ponzi scheme, '[t]he paying out of profits to the [recipient-defendant] not offset by further investments by him conferred no benefit on the [vehicle-entities] but merely depleted their resources faster."  Id. at 357 (citing to Scholes v. Lehmann, 56 F.3d 750, 757 (7th Cir. 1995); brackets in original).  Because of the Trustee's

admissions regarding PCB's real business activities, however, DZ Bank respectfully submits that the Court's holding concerning the recovery of profits or interest does not apply here, both due to the reasoning employed in <u>Scholes</u> and the holding in <u>Finn</u>.  <u>See</u> this Memo at 20, 22, <u>supra</u>.

### B.    Under the MUFTA, Repayments of Secured Debts are Not "Transfers"

The Uniform Fraudulent Transfer Act, which the MUFTA adopted, incorporates the same concept as Section 548 of the Bankruptcy Code and states that "a debtor can fraudulently transfer to another only that which the debtor actually owns."  <u>Richardson</u> 382 B.R. at 142; <u>see</u> <u>Ries v. Wintz Properties, Inc. (In re Wintz Cos.)</u>, 230 B.R. 848, 859 (B.A.P. 8th Cir. 1999).

The MUFTA provides that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor. . . .

Minn. Stat. § 513.44(a)(1).  The threshold question is whether a "transfer" was made.  <u>See</u> <u>Ries</u>, 230 B.R. at 860; <u>Knight v. Production Resource Group, LCC</u>, No. Civ. 036443 (MJD/JGL), 2005 WL 1630523, at *4 (D. Minn. July 11, 2005); <u>Shields v. Goldetsky (In re Butler)</u>, 552 N.W.2d 226, 231-32 (Minn. 1996).

The MUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset."  Minn. Stat. § 513.41(12).  An "asset" is "property of the debtor," but the definition expressly excludes "property to the extent it is encumbered by a valid lien."  Minn. Stat. § 513.41(2)(i); <u>see</u> <u>Ries</u>, 230 B.R. at 860.  The statute defines "lien" as "a charge against or an interest in property to secure payment of a debt or performance of an obligation, and includes a security interest created by agreement, a judicial lien obtained by legal or equitable process or

proceedings, a common-law lien, or a statutory lien."  Minn. Stat. § 513.41(8); see Ries, 230 B.R. at 860.

In connection with fraudulent conveyance claims involving repayment of antecedent debt, the courts have held that "assets encumbered by a valid lien are not 'assets' under the statute, and thus, no 'transfer' of those assets can occur under the MUFTA."  See, e.g., Knight, 2005 WL 1630523, at *4; see also Siematic Mobelwerke GMBH & Co. KG v. Siematic Corp., 643 F. Supp. 2d 675, 691 (E.D. Pa. 2009) ("there is no transfer subject to possible avoidance where the 'asset' 'transferred' is encumbered by a valid prior lien").[18]

In Knight, the plaintiff pledged the assets of his company to Haas in exchange for a cash payment between $500,000 to $750,000.  2005 WL 1630523, at *1.  The debtor subsequently acquired Haas, and then obtained a loan from a bank for $50 million.  Id.  Haas pledged its assets as collateral for the debtor's loan.  Id. at *2.  Haas also sent all of its receivables and creditor payments to a lockbox bank account, which the bank swept at the end of each business day.  Id. After Haas failed to repay the plaintiff, the plaintiff asserted a fraudulent conveyance claim against the debtor, id. at *3, alleging that Haas had fraudulently transferred its assets.  Id. at *4. The court, however, held that Haas' transfer of assets was not a transfer under the MUFTA because those assets were encumbered by the bank's "valid lien and enforceable security interest."  Id.  As a result, the property did not constitute "assets" under the MUFTA.  Id.

---

[18]  See Ries 230 B.R. at 860; Knight, 2005 WL 1630523, at *4; Agcountry Farm Credit Services, FLCA v. Oelke, No. A04-2096, 2005 WL 1950153, at *3 (Minn. Ct. App. Aug. 16, 2005); Lorenz Bus Service, Inc. v. Richfield Bus Co., No. C2-02-56, 2002 WL 2005468, at *3-4 (Minn. Ct. App. Sept. 3, 2002); see also Compuware Corp. v. Innovatec Communications, LLC, No. 03-C-429, 2005 WL 2076717, at *10 (E.D. Wis. Aug. 24, 2005); Epperson v. Entertainment Express, Inc., 338 F. Supp. 2d 328, 342 (D. Conn. 2004); Webster Industries, Inc. v. Northwood Doors, Inc., 320 F. Supp. 2d 821, 836-37 (N.D. Iowa 2004).

Here, DZ Bank gave a secured loan to Opportunity Finance, and the security for that loan was the collateral that Opportunity Finance had received pursuant to its loan agreement with PCB Funding.  See Complaint ¶ 46; Haveles Affidavit, Ex. 5 at 41, Ex. 3 at 9 & Ex. 4 at 4.  All of those liens were properly granted, and the Trustee does not contend or otherwise allege in the Complaint that the liens were invalid or that there was no actual property against which the liens had attached.  Opportunity Finance made the payments to DZ Bank, and the liens were released in exchange for those payments.  As in Knight, as a matter of law, under the MUFTA, the payments to DZ Bank cannot constitute fraudulent transfers.

## POINT II

## THE TRUSTEE FAILS TO ALLEGE INSOLVENCY

Under both the Bankruptcy Code and the MUFTA, the Trustee must establish that PCB Funding was insolvent at the time of the transfers.  In an attempt to do so, the Trustee alleges in a conclusory manner that PCB was insolvent, but that bare allegation is insufficient as a matter of law.  Not only does it fail to satisfy the pleading requirements for such an allegation, but it does not speak to PCB Funding, which was the actual transferor.[19]

Under the MUFTA, the Trustee must allege that the debtor "(i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Minn. Stat. § 513.44(a)(2); see id. § 513.45(a) ("the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation").

---

[19]   Indeed, since PCB Funding has never filed a petition for relief under the Bankruptcy Code, the Trustee is entitled to no presumption whatsoever regarding the insolvency of PCB Funding.

Likewise, the Bankruptcy Code requires that the transferor be insolvent at the time of the transfer or as a result of the transfer.  See 11 U.S.C. § 548(a)(1)(B)(ii).

Especially since Iqbal, when asserting a fraudulent conveyance claim, it is not sufficient for a plaintiff to rely on bare bones allegations to plead the element of insolvency.

> Just as a complaint alleging a constructive fraud claim based on a lack of reasonably equivalent value must plead facts in support, a complaint alleging a constructive fraud claim based on insolvency must plead facts from which an inference of insolvency can be drawn.  Conclusions are not enough.

Marwil v. Oncle (In re Life Fund 5.1 LLC), No. 10 A 42, 2010 Bankr. LEXIS 1938, at * 20 (Bankr. N.D. Ill. June 30, 2010) (citations omitted); accord Dixon v. Ruth (In re Gluth Bros. Construction, Inc.), 424 B.R 368, 377 (N.D. Ill. 2009).  In Dixon, the court rejected a bare bones allegation of insolvency, holding:

> the Plaintiff has offered no factual allegations to support its claim that the Debtor was insolvent at the time of the transfer or became insolvent because of the transfer.  Instead, the complaint merely gives a formulaic recitation of the element, stating that "Upon information and belief, the Debtor was insolvent, became insolvent, and/or had unreasonably small capital in relation to its business at the time, or as a result, of the Fraudulent Transfers."  As the creditor trustee, the Plaintiff should have enough access to information on the Debtor's finances to be able to allege at least some minimal factual support for its allegation.  But, under the standard set forth in Iqbal, the Plaintiff has failed to plead this element, and therefore has not sufficiently pled a complaint under the constructive fraud or "fraud in law" sections of the UFTA and 11 U. S. C. § 548(a)(1)(B).

Id.; see Sarachek v. The Right Place Inc. (In re Agriprocessors, Inc.), No. 10-09123, 2011 WL 4621741, at *7 (Bankr. M.D. Iowa Sept. 30, 2011) ("The Trustee must therefore plead facts to support a possible claim that the debtor was insolvent when the transfer was allegedly made to the insider."  "Again, to raise a plausible basis for the claim, Trustee must allege more than simply the legal element that Debtor was insolvent at the relevant time.").

In Petters II, the Court sustained the Petters trustee's seemingly bare insolvency allegations, holding that insolvency is inevitable within a Ponzi scheme's operation.  See Petters

II, 495 B.R. at 924.   Because of the Trustee's materially different allegations, DZ Bank respectfully submits that the Court's ruling does not apply here.   Even though the complaints in the Petters adversary proceedings contained a bare insolvency allegation such as the one in the Trustee's Complaint in this proceeding, the Petters trustee also alleged a number of additional facts that provided the specificity and plausibility necessary for the conclusory insolvency allegation to pass muster.   In those complaints, there were substantial allegations about the Ponzi scheme and Petters Company, Inc.'s central role -- thus, this Court concluded that, because a shell company that engages in a Ponzi scheme has no assets and is inherently insolvent, there were sufficient allegations of insolvency.   See id. at 923-24

Petters Company, Inc. was directly engaged in the Petters Ponzi scheme.   Petters II, 495 B.R. at 97.   Petters used Petters Company, Inc. as a "middleman" to purchase and sell consumer fictitious electronic goods.   Id. at 91.   Petters Company, Inc. showed investors fictitious purchase orders from big box companies such as Best Buy.   Petters would then funnel investor money to Petters Company, Inc. in order to pay earlier investors.   Id. at 909-10.   In addition, Petters "helped maintain the facade for the inducement of future lending," by rewarding Petters Company, Inc. employees with bonuses that were "funded by diversion of money from the tightening pyramid of victim-supplied capital."   Id. at 909, 911.   These allegations substantiate the contention that Petters Company, Inc. was an integral component of the Ponzi scheme. Consequently, this Court held that the Petters trustee's allegations regarding insolvency were not deficient.   Id. at 925.   The Court stated that:

> insolvency is an invariable characteristic of any entity that serves as the vehicle for a Ponzi scheme. It is inherent in the mechanics and process of the phenomenon; debt rapidly pyramids when capital inflow is siphoned away from true, profit-generating activity toward repayment of earlier investors (plus operating expenses and the purveyor's self-aggrandizing chicanery).  This quickly results in remaining assets that are grossly insufficient to meet the piled up debt.

Id. at 923.

Here, in sharp contrast, the Trustee does not make any allegations of that nature in his Complaint. Beyond the bare bones, conclusory allegation of insolvency in paragraphs 71, 75 and 79 of the Complaint, the Trustee makes no attempt to allege that PCB or any of the related Polaroid entities was anything but legitimate with real goods and revenue. See Complaint ¶¶ 19-26. The Trustee does not allege that PCB was a shell or artificial entity serving as a vehicle for the Ponzi scheme. See id. To the contrary, unlike the Petters trustee's allegations regarding Petters Company, Inc., the Trustee admits that "PCB actually purchased, warehoused, and sold to prominent retailers high volumes of consumer electronic equipment, branded with the 'Polaroid' name." Id. ¶ 24. PCB was a legitimate company with real Polaroid goods that were used as part of the security interest for the loans at issue. Id. ¶ 46. Unlike in the Petters complaints, the Trustee's allegations bar the inference that PCB and PCB Funding were insolvent. See In re Image Masters, 421 B.R. at 186 (the trustee did not sufficiently plead insolvency, and "a plaintiff must set forth factual allegations of fraudulent intent in connection with the specific transfer sought to be avoided and must show some direct connection between a defendant and a debtor's fraudulent Ponzi scheme").

As a matter of law, the Trustee's conclusory allegation, which simply parrots the statutory element of his claim, is legally insufficient. Moreover, the Trustee alleges facts that belie that conclusory allegation. The Trustee alleges that the transfers at issue occurred between 2003 and 2005. Complaint ¶ 45 & Exhibit A thereto. Yet, Polaroid, PHC and PCE waited until 2008 to file for bankruptcy protection, three years after the alleged transfers. Id. ¶ 2. Only upon filing for bankruptcy protection in 2008 did it become known that Polaroid's liabilities far

exceeded its assets.[20]  Furthermore, the Trustee's allegations regarding PCB's profitability can have no legal significance.  See Complaint ¶¶ 72, 74, 77.  This Court in Petters II held that, "[u]nder statute, 'insolvent' is a defined term in both MUFTA and the Bankruptcy Code.  It contemplates a straightforward meaning: the 'balance sheet' conception of insolvency, debts versus assets.  Minn. Stat. § 513.42(a)-(b); 11 U.S.C. § 101(32)(A)."[21]  Petters II, 495 B.R. at 923.  By themselves, the lack of profitability is not evidence relevant to, and is not the proof concerning, the issue of whether a company's assets exceeds its liabilities.

In addition, the Complaint is bereft of any allegations about the insolvency of the relevant transferors, Opportunity Finance and PCB Funding.  Although the Trustee makes allegations regarding PCB's insolvency, PCB Funding, the initial transferor, cannot be deemed insolvent simply because its parent was allegedly insolvent at the time of the transfer.  See Askanase v. Fatjo, 130 F.3d 657 (5th Cir. 1997).  In Askanase, for example, the trustee and the debtor's subsidiaries sued the debtor's directors and related parties, asserting claims for fraudulent conveyance.  Id. at 663.  The parent corporation had created a subsidiary (similar to PCB Funding) for the sole purpose of collecting the parent's receivables.  Id. at 664.  The district court granted the directors and related parties summary judgment, holding that the subsidiary as a

---

[20]  Copies of Polaroid, PCE and PHC financial disclosures, which were submitted during the bankruptcy proceedings, and are located at Docket Entry 21 for the PHC bankruptcy proceeding, Docket Entry 27 for the PCE bankruptcy proceeding and Docket Entry 92 for the Polaroid bankruptcy proceeding.  This Court may take judicial notice of them on this motion.

[21]  Section 513.42 of the MUFTA provides that: "(a) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, at a fair valuation. (b) A debtor who is generally not paying debts as they become due is presumed to be insolvent."  Minn. Stat. § 513.42(a)-(b).  The Bankruptcy Code similarly provides that "(32) The term 'insolvent' means -- (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of— (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors. . . ." 11 U.S.C. § 101(32)(A).

matter of law was not insolvent.  On appeal, the trustee argued that the parent and its subsidiaries were a single business enterprise and that a finding that the parent was insolvent was the equivalent of finding that the parent and the subsidiaries were insolvent as a single business enterprise.  Id. at 669.  The Fifth Circuit rejected that contention, and affirmed the grant of summary judgment, holding that a parent's insolvency does not necessarily determine the solvency of a subsidiary.  Id. at 670.  Thus, as a matter of law, PCB Funding likewise cannot be deemed insolvent simply even assuming that PCB was allegedly insolvent.[22]

## **CONCLUSION**

For the foregoing reasons, DZ Bank respectfully requests that the Court grant its Motion to Dismiss in its entirety and that the Court dismiss all claims as against DZ Bank with prejudice.

Respectfully submitted,

Dated:  December 20, 2013                WINTHROP & WEINSTINE

By:  *s/Michael A. Rosow*
          Michael A. Rosow
          Capella Tower | Suite 3500
          225 South Sixth Street
          Minneapolis, MN  55402-4629
          Phone:  (612) 604-6734
          Facsimile:  (612) 604-6834
          mrosow@winthrop.com

---

[22]  Indeed, unlike in the various Petters bankruptcy proceedings, there is no motion to consolidate the various Polaroid entities.  Indeed, such a motion would be an impossibility as to PCB Funding since it never filed a petition under the Bankruptcy Code before dissolving.  Thus, the Trustee cannot seek to treat PCB Funding and the other Polaroid entities (including PCB) as one consolidated entity.

KAYE SCHOLER LLP
H. Peter Haveles, Jr.
425 Park Avenue
New York, New York  10022
Phone:  (212) 836-8000
Facsimile:  (212) 836-8689
peter.haveles@kayescholer.com


Attorneys for Defendant DZ Bank AG, Deutsche
Zentral Genossenschaftsbank, Frankfurt Am Main

8618149v1

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| In re: | **Jointly Administered under** |
| Polaroid Corporation, et al., | **Case No. 08-46617** |
| Debtors. | **Jury Trial Demanded** |

In re:

Polaroid Corporation, et al.,

    Debtors.

(includes:
Polaroid Holding Company;
Polaroid Consumer Electronics, LLC;
Polaroid Capital, LLC;
Polaroid Latin America I Corporation;
Polaroid Asia Pacific LLC;
Polaroid International Holding LLC;
Polaroid New Bedford Real Estate, LLC;
Polaroid Norwood Real Estate, LLC;
Polaroid Waltham Real Estate, LLC)

**Jointly Administered
under
Case No. 08-46617
Jury Trial Demanded**

08-46621 (GFK)
08-46620 (GFK)
08-46623 (GFK)
08-46624 (GFK)
08-46625 (GFK)
08-46626 (GFK)
08-46627 (GFK)
08-46628 (GFK)
08-46629 (GFK)

Chapter 7 Cases
Judge Gregory F. Kishel

---

John R. Stoebner, Trustee,

    Plaintiffs,

vs.

Opportunity Finance, LLC; Opportunity Finance Securitization, LLC; Opportunity Finance Securitization II, LLC; Sabes Minnesota Limited Partnership; Robert W. Sabes; Janet F. Sabes; Jon R. Sabes; Steven Sabes; Deutsche Zentralgenossenschaftbank AG; and John and Jane Does 1-30,

    Defendants.

Adv. Proc. No. 10-04600

**JURY TRIAL DEMANDED**

---

# ORDER ON MOTION TO
# DISMISS THE SECOND AMENDED COMPLAINT

This matter came on for hearing before the undersigned Judge of the United States Bankruptcy Court on Defendant DZ Bank AG, Deutsche Zentral Genossenschaftsbank, Frankfurt Am Main's ("DZ Bank") Motion to Dismiss the Second Amended Complaint. Appearances were noted on the record.  Based on all the files, records and proceedings herein:

IT IS HEREBY ORDERED that DZ Bank's motion to dismiss the Second Amended Complaint is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's claims against DZ Bank are hereby dismissed in their entirety with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.


DATED:    _____        _____
                                 Chief Judge Gregory F. Kishel
                                 United States Bankruptcy Court

8603380v1

2